**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ABBAS ELCHEIKHALI,       :
                     :  Civil Action No. 09-1618(KSH)
         Plaintiff,   :
                     :
                     :
         v.          :  **OPINION**
                     :
C.C.A., et al.,       :
                     :
         Defendants.  :

**APPEARANCES:**

    ABBAS ELCHEIKHALI, Plaintiff pro se
    # 28413050
    N.E. Ohio Correctional Center
    2240 Hubbard Road
    Youngstown, Ohio 44505

**HAYDEN**, District Judge

Plaintiff Abbas Elcheikhali, a federal inmate currently confined at the N.E. Ohio Correctional Center in Youngstown, Ohio, seeks to bring this action in forma pauperis, alleging violations of his constitutional rights under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and 42 U.S.C. § 1983. This matter was administratively terminated by Order of this Court on April 29, 2009, because plaintiff had not paid the filing fee or submitted a complete application to proceed in forma pauperis ("IFP"), with his six-month prison account statement as provided by 28 U.S.C. § 1915(a)(2). The Order allowed plaintiff thirty (30) days to

submit a letter request to re-open the case with his complete IFP application, or the filing fee.

On May 7, 2009, plaintiff submitted an application to re-open his case, providing a complete IFP application with his certified, six-month prison account statement.  Therefore, this Court will direct the Clerk of the Court to re-open this matter and file the Complaint accordingly.  Furthermore, based on Plaintiff's affidavit of indigence, the Court will grant plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a)(1998), and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

## II.   BACKGROUND

Plaintiff brings this civil rights action against the following defendants: the C.C.A. N.E.O.C.C. in Youngstown, Ohio; the federal Bureau of Prisons ("BOP"); the United States of America; the Hudson County Correctional Center in Kearny, New Jersey; the Passaic County Jail in Paterson, New Jersey; the U.S.

2

Marshal Service, and the Cornell County Moshonnon Valley
Correctional Center in Phillipsburg, Pennsylvania. (Complaint,
Caption and ¶¶ B1-7). The following factual allegations are
taken from the Complaint, and are accepted for purposes of this
screening only. The Court has made no findings as to the
veracity of plaintiff's allegations.

Plaintiff alleges that he suffers from acid reflux, high
cholesterol, panic disorder, anxiety disorder and depression
personality disorder. He states that for 15 years he has been
prescribed the following medications: Prevacid for acid reflux;
Lipitor for high cholesterol; and Paxil and Xanax for his
anxiety, panic and depression disorders.

On June 1, 2007, Plaintiff was arrested by federal agents
and taken to the F.B.I. Building in Newark, New Jersey.
Plaintiff was then transferred to the Passaic County Jail without
his medications. He claims that he was seen by a nurse upon his
arrival at the jail but was placed in general population despite
his medical complaints and requests for medication. Shortly
afterwards, he was seen by a psychiatrist who prescribed Paxil
and Xanax, but Dr. Wahba at the Passaic County Jail denied the
prescription. The psychiatrist then prescribed another
medication for Plaintiff, but this new medication did not help.
Plaintiff alleges that the medication made him disoriented and he
fell from his bunk and hurt his ankle. He wrote numerous

requests and grievances, and finally, his "outside" psychiatrist
contacted the jail and asked that Plaintiff be sent to the
hospital and given the prescribed medication.  Dr. Wahba refused
to send Plaintiff to the hospital, but he did give Plaintiff the
prescribed medication for about a week before the medication was
again stopped.

Plaintiff was then transferred to the Hudson County
Correctional Center on January 8, 2008.  He was promptly screened
by a psychiatrist, who prescribed a different medication.
Plaintiff started to have shortness of breath and chest pain, and
was sent to the hospital for a week.  Upon his return to jail,
Plaintiff was placed in a one-man cell and received no medication
for a day.  He was then placed on other medication, which he
alleges made his panic attacks worse.  After he complained,
Plaintiff was sent to the Mental Health Unit at the Hudson County
Jail, where he was given a different medication.  This new
medication made Plaintiff feel worse; his body would get numb,
his brain would not function, and he contemplated suicide.

On July 15, 2008, after Plaintiff had been convicted and
sentenced in federal court, Plaintiff was transferred to the
Medical Detention Center ("MDC") in Brooklyn, New York.  He
admits that he received his medications while at MDC Brooklyn,
but had to wait for a month to see a psychiatrist.

4

On August 29, 2008, Plaintiff was transferred to the Moshannon Valley Correctional Center.  He was screened by a nurse upon his arrival and was sent to general population.  The next day, Plaintiff alleges that he was taken to the Special Housing Unit ("SHU") because there were threats on his life.  Plaintiff admits that the medical housing unit was called but they declined to admit Plaintiff.  While Plaintiff was confined in the SHU, he started to see the psychiatrist.  The psychiatrist told Plaintiff that he was not allowed to prescribe Paxil to Plaintiff because it is not covered by "jail insurance."  The psychiatrist did prescribe other medications in place of Paxil, but Plaintiff claims these other medications did not help him.  Plaintiff was seen by a psychologist once a week while confined at Moshannon Valley Correctional Center.

Two months later, on October 28, 2008, Plaintiff was transferred to the "C.C.A. N.E.O.C.C." in Youngstown, Ohio. Plaintiff was screened by a nurse upon his arrival and released to general population.  However, after Plaintiff started to get worse, he was taken to a medical cell and was seen by a psychiatrist.  The psychiatrist prescribed Paxil for Plaintiff, but Plaintiff started to hallucinate, seeing dead people and feeling like he wanted to die.  After a week, Plaintiff saw the psychiatrist again, who continued to prescribe Paxil.  Plaintiff

5

states that he continues to suffer, and has asked for a medical review to be sent to a federal medical facility.

Plaintiff seeks $150 million dollars to compensate him for defendants deliberate indifference to his serious physical and mental conditions.

III.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  Here, plaintiff is a prisoner who is proceeding in forma pauperis, and he is asserting claims against government prison officials with respect to incidents occurring while he was confined.  Consequently, this action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2200 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976)

6

and <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)).  <u>See</u> <u>also</u>
<u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court
must "accept as true all of the allegations in the complaint and
all reasonable inferences that can be drawn therefrom, and view
them in the light most favorable to the plaintiff." <u>Morse v.</u>
<u>Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The
Court need not, however, credit a <u>pro se</u> plaintiff's "bald
assertions" or "legal conclusions." <u>Id.</u>

In short, a pro se prisoner plaintiff simply need comply
with the pleading requirements of Rule 8(a)(2)(complaint should
contain "a short and plain statement of the claim showing that
the pleader is entitled to relief"). <u>See</u> <u>Erickson</u>, 127 S.Ct. at
2200.  Thus, a complaint must plead facts sufficient at least to
"suggest" a basis for liability. <u>Spruill v. Gillis</u>, 372 F.3d
218, 236 n. 12 (3d Cir. 2004).  "Specific facts are not
necessary; the statement need only 'give the defendant fair
notice of what the ... claim is and the grounds upon which it
rests." <u>Erickson</u>, 127 S.Ct. at 2200 (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires more
> than labels and conclusions, and a formulaic recitation of
> the elements of a cause of action will not do, <u>see</u> <u>Papasan</u>
> <u>v. Allain</u>, 478 U.S. 265, 286 (1986)(on a motion to dismiss,
> courts "are not bound to accept as true a legal conclusion
> couched as a factual allegation").  Factual allegations must
> be enough to raise a right to relief above the speculation
> level. ...

Bell v. Atlantic Corp. v. Twombly, 550 U.S. ___, 127 S.Ct. 1955, 1964-65 (2007)(quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Accordingly, a pro se prisoner plaintiff may allege only enough factual matter (taken as true) to suggest the required elements of the claim(s) asserted. Twombly, supra; Phillips v. Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim;

8

district court should permit a curative amendment before

dismissing a complaint, unless an amendment would be futile or

inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103,

108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C.

§ 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.

2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v.

Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

IV. SECTION 1983 AND BIVENS ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983,

with respect to the named state defendants, and under Bivens v.

Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S.

388 (1971), with regard to the federal defendants named in his

Complaint, alleging violations of his civil rights guaranteed

under the United States Constitution.

A.  Section 1983 Actions

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

9

under color of state law.  West v. Atkins, 487 U.S. 42, 48
(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

B.  Bivens Actions

    In Bivens, the Supreme Court held that one is entitled to
recover monetary damages for injuries suffered as a result of
federal officials' violations of the Fourth Amendment.  In doing
so, the Supreme Court created a new tort as it applied to federal
officers, and a federal counterpart to the remedy created by 42
U.S.C. § 1983.  The Supreme Court has also implied Bivens damages
remedies directly under the Eighth Amendment, see Carlson v.
Green, 446 U.S. 14 (1980), and the Fifth Amendment, see Davis v.
Passman, 442 U.S. 228 (1979).

    Bivens actions are simply the federal counterpart to
§ 1983 actions brought against state officials who violate
federal constitutional or statutory rights.  Egervary v. Young,
366 F.3d 238, 246 (3d Cir. 2004), cert. denied, 543 U.S. 1049
(2005).  Both are designed to provide redress for constitutional
violations.  Thus, while the two bodies of law are not "precisely
parallel", there is a "general trend" to incorporate § 1983 law
into Bivens suits.  Chin v. Bowen, 833 F.2d 21, 24 (2d Cir.
1987)).

    In order to state a claim under Bivens, a claimant must show
(1) a deprivation of a right secured by the Constitution and laws
of the United States; and (2) that the deprivation of the right

10

was caused by an official acting under color of federal law.  See
Mahoney v. Nat'l Org. For Women, 681 F. Supp. 129, 132 (D. Conn.
1987)(citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56
(1978)).

The United States has sovereign immunity except where it
consents to be sued.  United States v. Mitchell, 463 U.S. 206,
212 (1983).  In the absence of such a waiver of immunity,
plaintiff cannot proceed in an action for damages against the
United States or an agency of the federal government for alleged
deprivation of a constitutional right, see FDIC v. Meyer, 510
U.S. 471, 484-87 (1994), or against any of the individual
defendants in their official capacities, see Kentucky v. Graham,
473 U.S. 159, 166 (1985) (a suit against a government officer in
his or her official capacity is a suit against the government).
Therefore, Plaintiff's claims against the United States and the
Bureau of Prisons must be dismissed.

V.  ANALYSIS

A.  Eighth Amendment Denial of Medical Care Claim

It appears from the allegations in the Complaint that
Plaintiff is asserting an Eighth Amendment denial of medical care
claim against the prison facilities where he was confined and as
against the United States Marshal Service.

The Eighth Amendment proscription against cruel and unusual
punishment requires that prison officials provide inmates with
adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04

11

(1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In order
to set forth a cognizable claim for a violation of his right to
adequate medical care, an inmate must allege:  (1) a serious
medical need; and (2) behavior on the part of prison officials
that constitutes deliberate indifference to that need.  Estelle,
429 U.S. at 106; Natale v. Camden County Correctional Facility,
318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the
inmate must demonstrate that his medical needs are serious.
"Because society does not expect that prisoners will have
unqualified access to health care, deliberate indifference to
medical needs amounts to an Eighth Amendment violation only if
those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9
(1992).  The Third Circuit has defined a serious medical need as:
(1) "one that has been diagnosed by a physician as requiring
treatment;" (2) "one that is so obvious that a lay person would
recognize the necessity for a doctor's attention;" or (3) one for
which "the denial of treatment would result in the unnecessary
and wanton infliction of pain" or "a life-long handicap or
permanent loss."  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d
Cir. 2003)(internal quotations and citations omitted); see also
Monmouth County Correctional Institutional Inmates v. Lanzaro,
834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006
(1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

13

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  See Rouse, 182 F.3d at 197.  The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.  See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

Turning first to the objective element of an Eighth Amendment denial of medical care claim, this Court finds that, based on the allegations in the Complaint, Plaintiff may be able to establish a serious medical need.  He alleges that he suffers from serious mental problems that are causing him to hallucinate, contemplate suicide and become physically ill.  Moreover, Plaintiff contends that he has been prescribed medications for his conditions, which may be sufficient at this preliminary stage to support the first prong of a denial of medical care claim.

14

Accordingly, the Court next must consider whether Plaintiff has alleged facts sufficient to show deliberate indifference, the second, subjective prong of an Eighth Amendment denial of medical care claim.

Here, this Court finds that Plaintiff has not established sufficient facts at this time to support a claim of deliberate indifference by defendants, C.C.A., the U.S. Marshal Service, and the Hudson County Correctional Center, to Plaintiff's serious medical needs. First, as to the U.S. Marshal Service, they merely took Plaintiff into custody and transported him to the Passaic County Jail. With respect to the C.C.A., the current prison facility where Plaintiff is confined, Plaintiff has been receiving his prescribed medications, in particular, the Paxil that his "outside" doctor had prescribed. Plaintiff also has been under regular treatment with a psychiatrist.

Finally, it appears that Plaintiff was confined at Hudson County Correctional Center for almost five months, and during that time, he had been seen and treated by a psychiatrist and a psychologist, he was sent to the hospital when his physical condition worsened, and he received medications for his condition. Plaintiff, however, disagreed with the medications prescribed because it was not Paxil. Thus, it would appear that Plaintiff was simply dissatisfied with the type of treatment he was receiving, namely, a medication different from Paxil, but nevertheless, a medication used to treat Plaintiff's anxiety and panic disorders. As referenced above, "mere disagreements over

15

medical judgment do not state Eighth Amendment claims." White, 897 F.2d at 110.  Therefore, even if the medical judgment concerning the type of medication prescribed for Plaintiff is later determined to be wrong, at most what might be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

Consequently, based on Plaintiff's allegations, this Court finds that Plaintiff has not met the subjective prong of deliberate indifference required under the Estelle test, and therefore, his claim against the Hudson County Correctional Center will be dismissed without prejudice for failure to state a claim upon which relief may be granted at this time. Alternatively, Plaintiff's claims against the Hudson County Correctional Center and the C.C.A., will be dismissed with prejudice because prison and jail facilities are not "persons" for purposes of § 1983 liability.  See Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989); Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (D.C. Pa. 1976).

Nevertheless, it would appear that Plaintiff may have alleged facts sufficient to support a claim of deliberate indifference with respect to the Passaic County Jail and the Moshannon Valley Correctional Center.  With regard to Passaic County Jail, Plaintiff alleges that Dr. Wahba refused to give him his prescribed medication, and in fact, gave him no medications for the majority of time Plaintiff was confined at Passaic County

Jail.  There appeared to be no medical justification for Dr.
Wahba's refusal to give Plaintiff his prescribed medication.
Likewise, for the time that Plaintiff was at Moshannon Valley
Correctional Center, he was denied his prescribed medication,
Paxil, simply because it was not covered.

However, as stated above, Plaintiff's claims against these
two prison or jail facilities must be dismissed because jails and
prisons are not "persons" for purposes of § 1983 liability.  See
Grabow v. Southern State Correctional Facility, 726 F. Supp. 537,
538-39 (D.N.J. 1989); Mitchell v. Chester County Farms Prison,
426 F. Supp. 271, 274 (D.C. Pa. 1976).  Because Plaintiff has
named Dr. Wahba in the text of his Complaint as a state official
at Passaic County Jail who directly refused to provide Plaintiff
with Paxil or have him admitted at the hospital, this Court will
construe the allegations as naming Dr. Wahba as a defendant, and
will allow the denial of medical care claim to proceed at this
time.

Further, because this Complaint should be construed
liberally for a pro se litigant, this Court will allow Plaintiff
leave to amend his Complaint, pursuant to Federal Rule of Civil
Procedure 15, to name individual defendants or "persons" with
respect to his denial of medical care claims alleged during the
times he was confined at Passaic County Jail and Moshannon Valley
Correctional Center.

Plaintiff should note that when an amended complaint is
filed, the original complaint no longer performs any function in

17

the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.

## VI. CONCLUSION

Therefore, for the reasons set forth above, the Complaint will be dismissed with prejudice, in its entirety as against defendants, the United States of America, the C.C.A., the Bureau of Prisons, the U.S. Marshals' Service, and the Hudson County Correctional Center, for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Plaintiff's Eighth Amendment denial of medical care claim will be allowed to proceed against the named individual, Dr. Wahba, and the Clerk will be directed to add Dr. Wahba as a named defendant in the caption on the docket. Further, this Court will allow Plaintiff to amend his Complaint to name individual defendants in place of the named defendants, Passaic County Jail and Moshonnon Valley Correctional Center, with respect to his Eighth Amendment denial of medical care claims alleged while he was confined in those facilities. Finally, the Complaint will be dismissed with prejudice as against the defendants, Passaic County Jail and Moshonnon Valley

18

Correctional Center, for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), as these defendants are not "persons" subject to § 1983 liability.   An appropriate order follows.

KATHARINE S. HAYDEN
United States District Judge

Dated: 5/27/09

19