NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ABBAS ELCHEIKHALI,

          Plaintiff,

          v.

C.C.A., et al.,

          Defendants.

Civil Action No. 09-1618 (KSH)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

    Plaintiff Abbas Elcheikhali ("Elcheikhali") brings this action pursuant to 42 U.S.C. § 1983, alleging that three prison doctors and an administrator at two New Jersey jails violated his Eighth Amendment rights by failing to provide him with reasonable medical care for his depression and anxiety. Elcheikhali's complaint names Charles Meyers ("Meyers"), the Warden of the Passaic County Jail ("PCJ"), and PCJ's medical director, Magdy Wahba ("Dr. Wahba") (collectively, "PCJ defendants"), as well as two psychiatrists at the Hudson County Jail ("HCJ"), Manuel Sanchez, ("Dr. Sanchez") and Mariza Del Rosario Garcia ("Dr. Garcia") (collectively, "HCJ defendants").[1]

    Elcheikhali acknowledges that while incarcerated at each institution, he met with physicians and was provided medication for depression and anxiety, but he claims that the

---

[1] Elcheikhali's amended complaint [D.E. 13] also names Michael Zenk, warden of Moshannon Valley Correctional Center in Philipsburg, Pennsylvania, and Dr. Olin Fox, a physician at Moshannon Valley. This Court, in an order dated January 7, 2010 [D.E. 50], dismissed Plaintiff's complaint against Zenk and Fox for lack of personal jurisdiction.

defendants failed to adequately address his mental health issues by not prescribing the particular medication he preferred. [Am. Compl., D.E. 14 at 2–3.] Both sets of defendants now move for summary judgment [D.E. 82, 83], arguing that Elcheikhali received reasonable medical care for his depression and anxiety and that his allegations merely reflect a disagreement with the chosen treatment.

**Factual Background:**[2]

Plaintiff was a federal prisoner incarcerated at the Passaic County Jail from June 1, 2007, to January 8, 2008. [Am. Compl. at 1.] He was then transferred to the Hudson County Jail, where he was incarcerated until July 19, 2008, at which time he was transferred to the Metropolitan Detention Center in Brooklyn. [Am. Compl. at 2.] Prior to his incarceration, Elcheikhali had been prescribed Xanax and Paxil. [Am. Compl. at 1.]

**PCJ**

Throughout his seven months of incarceration at PCJ, Elcheikhali made approximately eleven formal complaints about panic attacks and depression and requested medication changes. [*See* Am. Compl. at 1–2.] According to PCJ Defendants' undisputed material facts, Elcheikhali received care from several medical professionals, including Dr. Nafeesa Siddiqui, M.D. and Dr. David Tutone, a PCJ psychologist, neither of whom is a named defendant in this action. [PCJ Def.'s Statement of Material Facts, D.E. 82 ("PCJ SOMF") at 4, ¶ 5–6.]

---

[2] The factual background is based on the record derived from the PCJ Defendants' brief [D.E. 82], the HCJ Defendants' briefs [D.E. 83], their supporting documents, and from Elcheikhali's deposition [PCJ's Moving Br., D.E. 82, Ex. C]. Plaintiff did not dispute defendants' statements of material facts. Under Local Rule 56.1(a), a party opposing summary judgment "shall furnish, with its opposition papers, a responsive statement of material facts. . .stating each material fact in dispute. . .and any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1(a). Accordingly, the defendants' material facts are deemed undisputed for the purposes of this motion. *See* Hill v. Algor, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000).

Upon entering PCJ on June 1, 2007, Elcheikhali requested Paxil and Xanax. After his initial medical screening with Dr. Siddiqui on June 5, 2007, Elcheikhali was prescribed Paxil and Vistaril. [PCJ SOMF at 4, ¶ 7.] Approximately one week later, he began complaining that Vistaril was not helping his depression and panic attacks. [Id. at 4, ¶ 8.] Dr. Siddiqui recommended switching Elcheikhali to Xanax, but Dr. Wahba, with the ultimate decision-making authority, denied this initial request to switch medications. [Id. at 4, ¶ 11.]

On June 24, 2007, Elcheikhali complained of chest pains and was taken to the emergency room the next day. [Id. at 4, ¶ 13.] After returning to PCJ, Dr. Wahba ordered that Elcheikhali's Paxil dosage be increased and that he switch from Vistaril to Xanax three times a day. [Id. at 5, ¶ 14–15.] Subsequently, Elcheikhali stopped complaining about his medication and refused other treatment from Dr. Wahba. [Id. at 5, ¶ 16.] In early August, 2007, Elcheikhali met with Dr. Tutone for psychological treatment. [Id. at 5, ¶ 17.] On August 10, 2007, Elcheikhali met with Dr. Siddiqui, again complaining of panic attacks and an inability to sleep. [Id. at 5, ¶ 18.] In response, Dr. Siddiqui gave Elcheikhali Trazodone, a sleep medication to resolve his sleeping issues. [Id. at 5, ¶ 18.] Additionally, Dr. Siddiqui added Vistaril, because Elcheikhali was still experiencing panic attacks. [Id. at 5, ¶ 21.]

On September 24, 2007, Elcheikhali met with Dr. Tutone again, but did not complain about his treatment. [Id. at 6, ¶ 23.] On October 4, 2007, however, he complained that his medication was not working. [Id. at 6, ¶ 22.] Dr. Siddiqui increased his dosage of Xanax and switched him from Paxil to Cymbalta, another anti-anxiety medication. [Id. at 6, ¶ 24.] Shortly thereafter, Elcheikhali acknowledges that he voluntarily chose to stop taking all of the prescribed medication because he felt that it was not helping him. [Id. at 6, ¶ 25.]

As a result of Elcheikhali's decision not to take any of the prescribed medication, Dr. Siddiqui consulted with Elcheikhali's outside psychiatrist and, on October 11, 2007, prescribed Klonopin. [Id. at 6, ¶ 26.]  Initially, Elcheikhali complained of side-effects from the Klonopin, and he was prescribed medications to counteract them. [Id. at 6, ¶ 28.]  On October 25, 2007, Elcheikhali met with Dr. Tutone and did not express any complaints. [Id. at 6, ¶ 30.]  On January 8, 2008, Elcheikhali was released from PCJ and transferred to HCJ. [Id. at 7, ¶ 32.]

### A. HCJ

Upon his transfer to HCJ, Elcheikhali requested Klonopin and Paxil. [HCJ Def.'s Statement of Material Facts, D.E. 83-1 ("HCJ SOMF"), at 2 ¶ 4.]  While at HCJ, Elcheikhali was under the regular treatment of HCJ psychiatrists, Drs. Garcia and Sanchez. [HCJ SOMF at 2, ¶ 5.]  Both doctors refused to prescribe Klonopin for Elcheikhali because Klonopin is not routinely given. [Id. at 3, ¶ 6.]  Instead, inmates who arrive at HCJ with Klonopin prescriptions are weaned off and transitioned to a non-addictive alternative. [Id. at 3, ¶ 7.]

The medical records indicate that Elcheikhali received Remeron—an alternative to Klonopin—for his anxiety and depression on January 8, 2008, which was the first day he arrived at HCJ. [Id. at 3, ¶ 10.]  He also received tapered doses of Klonopin in an attempt to wean him off the drug. [Id. at 3, ¶ 11.]  On January 9, 2008, Elcheikhali was placed in a quiet ward, and on January 10, 2008, he received his first psychiatric evaluation at HCJ. [Id. at 3–4, ¶ 12–13.] Elcheikhali was hospitalized for a short time on January 19, 2008, and the hospital physician prescribed an increased dosage of Klonopin as well as two other medications. [Id. at 4, ¶ 14.] When Elcheikhali returned to HCJ, Dr. Sanchez met with him and prescribed Remeron and Vistaril as alternative medications to those prescribed by the hospital physician. [Id. at 4, ¶ 15.] Two days later, Elcheikhali complained that Klonopin and Xanax were the only medications that

worked; Dr. Sanchez then ordered a return to the tapering dosages of Klonopin. [Id. at 4, ¶ 16.] In addition Dr. Sanchez discontinued Vistaril and prescribed Tegretol—another alternative medication. [Id. at 4–5, ¶ 17–18.]

For the next few weeks, Dr. Garcia and Dr. Sanchez assert that they monitored Elcheikhali closely and continued to wean him off the Klonopin due to concerns with dependency. [Id. at 5, ¶ 19.] During this time and the next few months, Elcheikhali continued to complain about his anxiety and depression, but Dr. Garcia and Dr. Sanchez continued their chosen course of treatment. [Id. at 6–9.] During several of Elcheikhali's visits with Dr. Garcia and Dr. Sanchez, he indicated that his anxiety was improving, [Id. at 5, ¶ 23; 7, ¶¶ 28, 34; and 8, ¶¶ 36, 37]. On other occasions, he complained about side effects or more panic attacks. [Id. at 5, ¶¶ 20 and 7, ¶¶ 29, 31, 32.] All in all, Elcheikhali met with HCJ medical officials more than thirty times during his incarceration there. [*See* id. at 3–9.]

Elcheikhali filed suit on April 6, 2009, claiming that while he was housed at PCJ and HCJ, Dr. Wahba, Meyers, Dr. Garcia, and Dr. Sanchez repeatedly refused to give him the medication he wanted and continued to prescribe him medication that was not helping him. [Am. Compl. at 1–3.]

Specifically, Elcheikhali contends that Dr. Wahba and Meyers were deliberately indifferent to his medical needs while he was incarcerated at the PCJ. [Am. Compl. at 1.] Elcheikhali additionally complains that for part of his time at the PCJ, the jail officers did not consistently deliver him the prescribed medication and Meyers, as PCJ warden, is responsible for this alleged failure. [Am. Compl. at 1.] Regarding incarceration at the HCJ, Elcheikhali complains that Dr. Garcia and Dr. Sanchez failed to prescribe him medication that alleviated his

anxiety and depression. [Am. Compl. at 2.] Elcheikhali asserts that failing to find an effective medication constitutes deliberate indifference to his medical needs. [Am. Compl. at 3.]

All four defendants now move for summary judgment arguing that there are no genuine issues of material facts as to whether they violated Elcheikhali's constitutional rights. [PCJ's Moving Br., D.E. 82, at 9; HCJ's Moving Br., D.E. 83, at 4–5.] They assert that, even when viewing all facts in a light most favorable to Elcheikhali, he has not satisfactorily made a showing of deliberate indifference, to wit that the defendants knew of and disregarded a serious risk of injury to his medical needs. All four defendants assert that Elcheikhali's complaint is merely a disagreement with the chosen treatment. [PCJ's Moving Br. at 11; HCJ's Moving Br. at 5.]

**Legal Standard:**

Summary judgment is appropriate when the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact." An issue of fact is genuine if a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When analyzing a motion for summary judgment, the court must draw all inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**Discussion:**

   A. **Section 1983 Actions**

6

Section 1983 does not provide substantive rights, but rather provides a means by which a plaintiff can seek relief for violations of rights created by federal law. To establish a § 1983 violation, a plaintiff must demonstrate that (1) the challenged conduct was committed by a person acting under state law, and that (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. There is no dispute that the collective defendants are state actors for purposes of § 1983.

B. **Eighth Amendment Claims:**

    1. **Eighth Amendment Standard**

The treatment provided to inmates by prison officials is subject to review under the Eighth Amendment prohibition of cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1970). The Supreme Court has established that failing to provide adequate medical care or any medical care violates the Eighth Amendment. *Christy v. Robinson*, 216 F. Supp. 2d 398, 412 (D.N.J. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). To establish an Eighth Amendment violation arising out of medical care, an inmate must make two showings.

First, the prisoner's medical needs must be "sufficiently serious." *Brown v. Diguglielmo*, No. 09-3494, 2011 LEXIS 5752, at *8 (3d Cir. 2011) (quoting *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003)). The Third Circuit has defined "sufficiently serious" to be a condition diagnosed by a medical professional that requires treatment, or one that is so apparent that a lay person easily would recognize it as requiring medical attention. *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981).

Second, the prison official must act with the requisite state of mind, namely, that of deliberate indifference. *Id.* In the instant case, Elcheikhali must provide sufficient evidence that

7

the defendants knew he faced a "substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). When determining whether the measures taken were reasonable, courts have consistently given "considerable latitude to prison medical authorities in the diagnosis and treatment of medical problems." *Inmates of Alleghany County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Courts will not "second-guess the . . . adequacy of a particular course of treatment [as it is] a question of sound professional judgment." *Id*. (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Importantly, an Eighth Amendment claim is not satisfied by a mere showing that the inmate disagrees with the medical treatment he received. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

**2. Claims Against the PCJ Defendants, Dr. Wahba and Meyers**

Elcheikhali has not adduced evidence supporting his claim that Dr. Wahba and Meyers were deliberately indifferent to his medical needs. Courts generally will not find deliberate indifference when some level of medical care has been provided, *Christy v. Robinson*, 216 F. Supp. 2d 398, 414 (D.N.J. 2002). A review of the medical records—which are consistent with Elcheikhali's account—indicates that medical personnel evaluated Elcheikhali frequently. Thus, based on the undisputed facts in the record, Elcheikhali's care was continuous and the doctors repeatedly altered his prescriptions in response to his complaints. Although Elcheikhali alleges that he wanted different medical care and that he struggled with depression and anxiety throughout his incarceration, the fact that his treatment did not cure his anxiety and depression does not mean that he received inadequate or unreasonable care.

In *Johnson v. Watson*, 303 Fed. Appx. 79 (3d Cir. 2008), the Third Circuit addressed a prisoner's complaint seeking an alternative tuberculosis test, as well as a different pain killer

than the one he was being prescribed. In affirming dismissal of the complaint, the Third Circuit summarized the plaintiff's claim as an "issue with the medical personnel's decision not to give him . . . his preferred choice of medication." *Id.* at 81. The Court concluded that his disagreement with medical personnel decisions was "not an adequate basis for establishing an Eighth Amendment violation." *Id.* The Third Circuit addressed this issue again a year later in *Gause v. Diguglielmo.* 339 Fed. Appx. 132 (3d Cir. 2009). In *Gause*, the plaintiff complained that he received Motrin instead of Ultram for pain. The Court concluded that the plaintiff did not present a genuine issue for trial because his allegations merely "amount[ed] to a disagreement over the exact contours of his medical treatment." *Id.* at 136.

Based on Elcheikhali's account of his treatment, as well as the medical records and the doctors' depositions, Elcheikhali does not present sufficient evidence for a jury to find that defendants were deliberately indifferent to his medical needs.

Elcheikhali's second complaint against Dr. Wahba and Meyers is that the jail officials were not consistently delivering his prescriptions during December of 2007. Under the deliberate indifference standard, Elcheikhali must show that Dr. Wahba and Meyers *knew* of a substantial risk and failed to adequately respond. Dr. Wahba, the Medical Director of PCJ, and Meyers, the Warden, assert that they were not personally responsible for handing out prescriptions. [PCJ Moving Br., D.E. 82, at 18.] Elcheikhali does not contest this; he merely states that he did not receive his medicine consistently in the month prior to his transfer out of PCJ. [Am. Compl., D.E. 13, at 1–2.]

Notably, Elcheikhali does not present any evidence that there was an interruption in his receipt of his medication or that Dr. Wahba and Meyers were involved in that interruption. The Court cannot assume that Dr. Wahba and Meyers, simply because of their positions within PCJ,

9

were aware of any issues regarding Elcheikhali receiving his medication. Without any evidence in support of his allegation, Elcheikhali's claim that Meyers and Dr. Wahba were responsible for inconsistent delivery of his medication in December, 2007, cannot survive summary judgment.

Elcheikhali is required to present evidence showing that Dr. Wahba and Meyers were aware of and deliberately disregarded a substantial risk to his health. While all evidence must be viewed most favorably for Elcheikhali on a motion for summary judgment, he has not actually presented any evidence in this regard and, as a result, summary judgment is appropriate for all claims against Dr. Wahba and Meyers.

### 3. Claims Against HCJ Defendants, Dr. Sanchez and Dr. Garcia

Elcheikhali met with HCJ medical officials more than thirty times in his six months of incarceration there. [Pl.'s HCJ Medical Chart, D.E. 83, Ex. D.] Elcheikhali asserts that the defendants would not give him the medication that he wanted and that this is evidence that they were deliberately indifferent to his medical needs. [Opp'n to HCJ Mot. for Summ. J., D.E. 88, at 3.] The Third Circuit has been clear that medical personnel receive "considerable latitude" and that it will not "second-guess" the doctors' professional judgments. *Inmates of Alleghany County*, 612 F.2d at 762. Dr. Garcia and Dr. Sanchez assert that their concerns with the dependency of Klonopin are within their professional judgment as treating physicians. [HCJ Def.'s Moving Br., D.E. 83, at 5.] The Court agrees. The fact that Elcheikhali did not agree with the doctors' prescription choices, as previously stated, cannot satisfy the requirements of an Eighth Amendment violation. Summary judgment is appropriate.

**Conclusion:**

For the reasons set forth above, the Court grants defendants' motions for summary judgment [D.E. 82, 83] as to Elcheikhali's Eighth Amendment claims against all four defendants. As these constitute the only remaining claims before the Court, Elcheikhali's action is dismissed.

/s/ Katharine S. Hayden

March 31, 2011                                                                Katharine S. Hayden, U.S.D.J.